

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HAROLD B. CORNISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0049-M |
| | § | |
| DALLAS POLICE ASSOCIATION, GLENN WHITE, DALLAS POLICE ASSOCIATION BOARD OF DIRECTORS, and BOB GORSKY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment, filed on May 6, 2005; Defendant's Objections to Plaintiff's Summary Judgment Evidence, filed on July 12, 2005; and Plaintiff Harold Cornish's Objections and Motion to Strike Defendant's Summary Judgment Evidence, filed on June 28, 2005. Upon consideration of the Motions and Objections, the court **GRANTS** the Motion for Summary Judgment and **DENIES** the Objections and Motion to Strike.

## I. BACKGROUND FACTS

Defendant Dallas Police Association ("DPA") is a union that exists, in substantial part, for the purpose of representing police officers in legal proceedings concerning all aspects of their employment with the City of Dallas. Defendant Glenn White is the president of the DPA; defendant Bob Gorsky has represented the DPA. The DPA maintains a set of guidelines to assist

members in understanding which legal fees the union will pay for. The guidelines include the following statements:

- The DPA will provide legal assistance through a specified law firm. Other lawyers may only be used if the specified law firm is not available.

-No legal fees or expenses will be paid by the DPA to any other attorney or law firm without the prior approval of the President or the Board of Directors.

-Certain matters do not require prior approval, but members are told to contact the President for a tracking number before contacting the preferred law firm.

-The DPA will reimburse up to $5,000 of legal defense costs incurred in connection with criminal trials. Such reimbursements will be reviewed for reasonableness.

Despite these guidelines, Defendants state that the DPA has not placed a monetary limit on covered legal fees for certain lawsuits. According to Defendants, if the legal issue impacts a significant number of DPA members or is directly related to retaliation against a DPA member for engaging in DPA activities, the DPA would go "outside the guidelines" and cover all necessary litigation expenses. Such litigation is referred to by the DPA as "non-guideline" litigation. Recently, the DPA provided open-ended financing to "skip promotion" cases, in which Caucasian police officers alleged that the Dallas Police Department ("DPD") promoted minority police officers over more qualified Caucasian police officers.

The DPD terminated Plaintiff's employment in 1999. Plaintiff, proceeding *pro se*, appealed the DPD's decision to fire him through the city civil service guidelines, which culminated in a trial before a City of Dallas administrative law judge ("ALJ") in 2001. The ALJ ruled against Plaintiff.

After the ALJ's decision, Plaintiff petitioned the DPA to finance an appeal of the ALJ's decision. At some point, Plaintiff requested "non-guideline" funding, stating that it was impossible to predict the litigation costs. In response, the DPA offered to finance Cornish's

lawsuit for up to $5,000. After dismissing that offer as inadequate, Plaintiff, acting *pro se*, filed suit against the City of Dallas in 2004. The case is currently pending.

At some point, Plaintiff was indicted on five criminal counts. Each was eventually dismissed. Plaintiff asked for $25,000 from the DPA for his defense; it denied his request. Plaintiff acknowledges that two other police organizations, CLEAT and TMPA, provided him legal representation on the criminal charges at no cost, although he alleges he incurred other out-of-pocket expenses. In his deposition, Cornish admitted that he suffered no monetary loss in connection with the criminal indictments.

On January 9, 2004, Plaintiff filed a complaint, alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Texas Commission on Human Rights Act ("TCHRA"), and 42 U.S.C. § 1981. Plaintiff claims that Defendants denied him funding on the basis of his race for (1) his lawsuit against the City, and (2) his expenses in connection with the five-count indictment. Plaintiff also claims that Defendants' denial of funding for his lawsuit against the City was in retaliation for his complaints about race discrimination in the DPD.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 302 (5th Cir. 1990). If the moving party meets this initial burden, then the

burden shifts to the nonmovant, who must produce evidence establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 321-22 (1986). This burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment is mandatory. *Id.* at 322-24. The record must be considered in the light most favorable to the nonmovant. *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir. 1985).

## III. OBJECTIONS AND MOTION TO STRIKE

The Court **DENIES** all Objections and the Motion to Strike. The Court would grant the Motion for Summary Judgment whether or not the record contained the evidence to which either party objected.

## IV. RACE DISCRIMINATION

The Court examines Title VII race discrimination cases under a "modified *McDonnell Douglas* approach." *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework,

> [T]he plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext

> alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).'

*Rachid*, 376 F.3d at 312.

Under this regime, Cornish must first establish a prima facie case of discrimination. *Id.*; *Keelan*, 407 F.3d at 342. If he presents a prima facie case, a presumption of discrimination arises. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). In the usual employment discrimination case, a plaintiff proves a prima facie case by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position that he held; (3) the plaintiff was discharged; and (4) the plaintiff was replaced with a person who is not a member of the protected class. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). The facts of this case require a different standard. Here, Plaintiff will prove a prima facie case if he shows that (1) he is a member of a protected class; (2) he qualified for union assistance; (3) he was denied union assistance; and (4) similarly situated individuals, not in the protected class, received union assistance. *Cf. Eliserio v. United Steelworkers Local 310*, 398 F.3d 1071, 1079 (8th Cir. 2005) (recognizing different standards in a Title VII retaliation claim against an employer and a Title VII retaliation claim against a union); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (stating that the fourth element can be met by showing that other similarly situated employees outside the protected class were treated more favorably); *Richardson v. Bakery, Confectionary, and Tobacco Workers, Local No. 26*, No. 95-1518, 1996 WL 422070, at *1 (10th Cir. July 29, 1996) (unpublished) (upholding summary judgment against an employee who sued his union for not representing him in a discrimination case against his former employer). Cornish must raise a genuine issue of material fact as to whether an

employee outside of his protected class received better treatment on circumstances nearly identical to his. *see Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

Because Plaintiff has not submitted sufficient evidence to prove a prima facie case of race discrimination, this Court need not reach Defendants' non-discriminatory reason or Plaintiff's possible rebuttals under *Rachid.*

a. Prima Facie Case

Defendants argue that Cornish cannot establish a prima facie case. At first blush, Cornish has satisfied the first and third elements – he is an African-American who was denied reimbursement for his legal representation. The second element requires that Plaintiff show that he "qualified for union assistance." As a union member in good standing, Plaintiff argues that he is obviously qualified to receive union assistance.

Defendants argue that more than mere membership is necessary to qualify for non-guideline litigation funding; the DPA Board must determine that the issue raised in Plaintiff's proposed litigation will affect a large number of DPA members. Such a determination, however, is necessarily subjective. Subjective determinations cannot be used to challenge Plaintiff's qualifications in a discrimination action. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (stating that subjective criteria may serve as a pretext for discrimination). Disregarding the necessary subjective determination, then, Plaintiff has shown that he objectively qualifies for non-guideline litigation funding through his DPA membership, and has thereby satisfied the second element.

Similarly, Defendants argue that Plaintiff does not qualify for reimbursement of the fees and expenses relating to his criminal indictments because other labor organizations had already

paid for those fees and expenses. Cornish responds that such a situation does not prevent the DPA from reimbursing his fees and expenses, noting the absence of such a factor in the DPA guidelines.[1] For the purposes of summary judgment, Cornish has proved this element.

As to his "non-guideline" litigation funding, Cornish has not presented sufficient evidence to create a fact issue as to the fourth element, that "similarly situated" individuals not in the protected class were treated differently. To establish this element, Plaintiff must show that Caucasian union members were treated differently under circumstances "nearly identical" to his. *Wheeler*, 415 F.3d at 406; *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). Plaintiff alleges that, in the "skip promotion" cases, Caucasian police officers received the same union assistance Plaintiff asks for. Because both the Caucasian police officers and Plaintiff were members of the DPA suing the DPD under a race discrimination theory, Plaintiff urges the Court to find that the officers involved in the "skip promotion" cases are similarly situated to Plaintiff. However, the Court cannot use broad similarities to satisfy this requirement; instead, it must compare the details of each situation. *Cf. Wheeler*, 415 F.3d at 406 (holding that, despite the fact that the plaintiff and another employee both had the same supervisor, were directors, and were both accused of removing company assets at the same time, the two were not "similarly situated," because the other employee had readily admitted her conduct during the investigation and had stolen items of substantially less value); *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (holding that, although the plaintiff and another employee were both "low level hourly employees," the two were not "similarly situated," because the other employee

1 The guidelines state that "The DPA will reimburse up to $5,000 of legal defense costs incurred in connection with criminal trials. Such reimbursements will be reviewed for reasonableness."

was accused of stealing alcohol, party decorations, and table decorations, while the plaintiff was accused of stealing money from a client's gift table at a catered event).

Plaintiff has not presented sufficient evidence to create a fact issue as to whether the officers represented in the "skip promotion" cases were similarly situated to Plaintiff. First, Cornish alleges that he was fired after he was (1) indicted for five criminal violations (which were cleared and expunged), (2) issued a citation (which was cleared and expunged), and (3) charged with approximately thirteen administrative violations. Plaintiff suggests that the DPD terminated his employment "for numerous allegations" after Plaintiff had began filing with the EEOC and participating in "employment activities."[2] Cornish Dec. at 2. Whatever the stated reasons for his termination, Cornish alleges that his termination was racially discriminatory. The mere fact that the skip promotion cases also concerned race discrimination does not make the skip promotion plaintiffs similarly situated to the Plaintiff. Plaintiff has made no attempt to connect the particulars of his discrimination case against the DPD to the particulars of the skip promotion cases. The skip promotion cases did not concern terminations, and the discrimination alleged in the skip promotion cases could plainly affect every Caucasian DPD officer who sought promotion. Except in a vague conclusory way, Cornish has not shown how his case could affect a similar number of police officers.[3]

---

2 By "employment activities," Plaintiff seems to refer to his Freedom of Information Act requests to the DPD asking about DPD's discipline, appeals, grievance, and investigatory processes. Cornish Dec. at 1.

3 Plaintiff attempts to rebut this point in his Response, stating that: "Defendants say that the issues in Plaintiff's civil rights case do not impact a significant number of members, and Plaintiff's issue is unique to himself. It is hard to imagine an issue with farther reaching impact than equal protection under the law. That is a false basis for differentiating Plaintiff's case from the reverse discrimination cases." These conclusory allegations do not constitute proper summary judgment evidence. Without evidence that shows the "far reaching impact" Plaintiff alleges, the Court cannot accept this contention.

A similar analysis applies to the reimbursement of the fees and expenses relating to Cornish's criminal indictments. Plaintiff alleges that Officers Harold Beil and Ed Cate were reimbursed $5,000 for legal fees, and out-of-pocket expenses, in connection with criminal charges against them. Plaintiff has provided no particulars, such as: (1) whether Beil and/or Cate were represented by pro bono legal counsel; (2) what type of expenses Beil and/or Cate were reimbursed for; (3) the type of out-of-pocket expenses Cornish avers he incurred; or (4) the relationship between the indictments and the official duties of Cornish, Beil, and Cate. Without deciding what evidence would be determinative, the Court concludes Cornish has not carried his burden of proving Beil and Cate to be similarly situated – that they were officers who incurred no actual expenses and still sought reimbursement from the DPA.

Because the Plaintiff has not produced evidence that creates a fact issue as to whether "similarly situated" individuals not in the protected class were treated differently, Plaintiff has failed to prove a prima facie case for summary judgment purposes. Therefore, Defendants' Motion for Summary Judgement is **GRANTED** as to Plaintiff's race discrimination claim.

## V. RETALIATION

Plaintiff also alleges retaliation. In the usual retaliation case, to prove a prima facie case, the plaintiff must show that he (1) engaged in a protected activity; (2) was subjected to an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). In an employment context, the second element is only met by showing an adverse "ultimate employment action." *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir.

2003).[4] In a non-employment context, however, two circuits have held that a plaintiff need only prove an "adverse decision." *See Eliserio*, 398 F.3d at 1079; *cf. Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002). To establish the third element, the employee need only demonstrate that the employer knew about the protected activity at the time of the adverse employment action. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

Plaintiff has proffered sufficient evidence to establish a prima facie case. Plaintiff has presented evidence that he complained about alleged race discrimination while he was working at the DPD, which is conduct protected under 42 U.S.C. § 2000e-3(a). For the second element, Cornish asserts that he was denied litigation assistance.[5] Without adopting the Eighth Circuit's broad standard in *Eliserio*, the Court holds that this decision satisfies the second element. Finally, Cornish has shown that DPA's board knew about his complaints when it denied his litigation expenses.

a. Non-Retaliatory Reason

---

4 "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. Title VII does not address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. Thus, changing locks, restructuring office procedures, clarifying job duties, and taking disciplinary actions in the form of reprimands do not constitute ultimate employment decisions. If none of the actions rise to the level of an 'ultimate employment decision,' the plaintiffs will fail to make a prima facie case." *Ackel*, 339 F.3d at 385.

5 In the Retaliation section of his Response, Cornish references only DPA's failure to provide financing to litigate his case against the City of Dallas. As a result, in evaluating Cornish's retaliation claim, the Court will not consider DPA's alleged failure to provide reimbursement for Cornish's expenses incurred while defending against his indictments.

Because Plaintiff has established a prima facie case of retaliation, a presumption of retaliation is raised. Defendants can rebut this presumption by articulating a legitimate, non-retaliatory reason for their actions. *See Shackelford*, 190 F.3d at 404. This burden is only one of production, not persuasion, and involves no credibility assessments. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Defendants state that they did not provide unlimited lawsuit assistance to Plaintiff because his case did not impact a significant number of members and was not directly related to retaliation against a DPA member for his DPA activities.[6] This reason successfully rebuts Plaintiff's prima facie case.

b. Rebuttal

Plaintiff must now rebut Defendant's explanation to defeat summary judgment. Cornish may defeat summary judgment by showing that the Defendant's non-retaliatory reason is not true, but is instead a pretext for discrimination. *See Baker v. Am. Airlines, Inc.*, No. 04-11486, 2005 U.S. App. LEXIS 24328, at *10 (5th Cir. Nov. 9, 2005).

Plaintiff has not shown sufficient evidence of pretext. Plaintiff has not attempted to show that his lawsuit is directly related to retaliation against a DPA member for his DPA activities, but instead urges that he has produced evidence that his lawsuit impacts a significant number of DPA members. The Court disagrees.

In the litigation for which Cornish requested DPA funding, he claimed race discrimination by the DPD; i.e., that the DPD subjected African-American police officers to

6 As a second nondiscriminatory reason, Defendants assert that the DPA does not reimburse legal fees for members acting *pro se*.

harsher discipline than Caucasian police officers. In his declaration, however, Plaintiff states that the background facts in the litigation were quite specific; he alleges that the DPD unreasonably fired him for "investigating his employer" through filings with the EEOC, and FOIA requests about the DPD's policy on discipline, appeals, grievances, and investigations. Therefore, the suit specifically alleges that, because of his race, DPD reacted differently to Plaintiff's investigations of the DPD. To show pretext, Cornish must produce evidence that shows the falsity of Defendant's explanation -- that a significant number of DPA members are not affected by this issue. *See Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002). Therefore, Cornish needs to produce evidence that shows that a significant number of DPA members (1) have investigated the city (whether through FOIA requests, using the EEOC, or otherwise), and (2) have been "subjected to harsher discipline" as a result. Cornish has not done so.[7]

---

7 Many district courts in the Fifth Circuit have applied *Rachid*'s "modified *McDonnell Douglas* approach" to retaliation claims. *See, e.g., Warren v. Terex Corp.*, 328 F. Supp. 2d 641, 646 (N.D. Miss. 2004); *Brooks v. State Farm Mut. Auto. Ins. Co.*, 3:03-CV-3018-B, 2004 U.S. Dist. LEXIS 23959, *18-21 (N.D. Tex. Nov. 30, 2004); *Cones v. Duke Energy Corp.*, 367 F. Supp. 2d 1092, 1100 (S.D. Tex. 2005); *Knighten v. State Fair*, No. 03-1930, 2005 WL 1629933, at *4 (W.D. La. July 1, 2005); *Bell v. Bank of Am.*, 3:03-CV-2650-B, 2005 U.S. Dist. LEXIS 11649, at *23-24 (N.D. Tex. June 14, 2005). Under this regime, to defeat summary judgment, Cornish could use circumstantial evidence to prove that Defendants' non-retaliatory reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is retaliation for Plaintiff's protected conduct.

Whether or not the modified *McDonnell Douglas* approach applies to claims of retaliation under Title VII, Plaintiff has not produced any evidence that retaliation for Cornish engaging in protected conduct was a "motivating factor" in the DPA's decision to deny litigation assistance. Cornish has produced evidence of "indirect comments" about racial issues in relation to his interaction with Defendants. Specifically, Cornish alleges that, while on the telephone with Glenn White, White said, "If you are going to be talking about racial shit, I'm going to hang up." Second, Cornish alleges that at a meeting between him and the DPA Board, one DPA Board member said, "So, is this a black versus white issue?" Such indirect comments may be probative of unlawful discriminatory intent. *See Rachid*, 376 F.3d at 315. These particular comments, however, are only arguably probative of *race* discrimination. The Court does not construe the comments to show any sort of motive to retaliate against Cornish for his privileged conduct. Cornish does not attempt to identify any evidence in his Response that would lead the Court to

## VI. CONCLUSION

Because Plaintiff did not proffer evidence to create a genuine issue of material fact as to either race discrimination or retaliation, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**SO ORDERED.**

December 13, 2005.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

find that retaliation for protected conduct was a "motivating factor" in the DPA's decision to deny Cornish litigation assistance. Cornish has not carried his burden.

# CASE CLOSED

**CASE NUMBER:** 3:04-cv-049-M

**DATE:** 12/13/05

**TRIAL: YES** ______ **NO** X